**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Roanoke Division)**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ T. Costa
DEPUTY CLERK

| | | |
|---|---|---|
| DANIEL PALMER, | ) | |
| | ) | |
| STACIE PALMER, and | ) | |
| | ) | |
| S.P., by his parents and next friends, | ) | |
| DANIEL and STACIE PALMER, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| v. | ) | Case No. 7:26-CV-00260 |
| | ) | |
| VIRGINIA HIGH SCHOOL LEAGUE, INC., and | ) | JURY TRIAL DEMANDED |
| | ) | |
| ROANOKE COUNTY SCHOOL BOARD | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**VERIFIED COMPLAINT**

For their Verified Complaint against Virginia High School League, Inc. and Roanoke County School Board (collectively "Defendants"), Daniel Palmer and Stacie Palmer ("Palmers") both individually and as next friend for their minor child, S.P. (collectively, "Plaintiffs"), by and through the undersigned counsel, allege as follows:

INTRODUCTION

1.      Plaintiff S.P. is a 9th grade high school boy who loves to run and desires to do so competitively. But simply because he is home schooled by his parents, Defendants Virginia High School League, and his school division Roanoke County School Board, by policy, deny S.P. the ability to compete in track & field or cross country as thousands of other Virginia high school students can. There is no rational basis for Defendants' exclusionary policy, and therefore it

1

violates S.P.'s constitutional guarantee of equal protection under law. It also violates Plaintiffs' rights under Article 1, Section 16 of the Virginia Constitution and Virginia's Religious Freedom Restoration Act because a significant and primary reason the Palmers home school S.P. is that their religious convictions lead them to do so. Because Defendants' exclusion of S.P. violates state and federal law, Plaintiffs seek relief.

THE PARTIES

2.      Plaintiff Daniel Palmer is S.P.'s father, one of his home school teachers, and his running coach. He is also the lead pastor of a Baptist church in Roanoke.

3.      Plaintiff Stacie Palmer is S.P.'s mother and his primary home school teacher.

4.      S.P. is a minor in 9th grade who is home schooled by his parents under Virginia's "Notice of Intent" provision of the Virginia Code. Va. Code § 22.1-254.1. As a runner of track & field and cross country, S.P. desires to compete in interscholastic high school athletics, which are regulated and controlled by the Virginia High School League.

5.      Defendant Virginia High School League ("VHSL") is a Virginia public entity and state actor that governs interscholastic sports and academic competitions for every Virginia public high school, and some of Virginia's private high schools, by setting standards, implementing rules (including eligibility requirements), and organizing statewide competitions in numerous athletic (27 sports) and academic activities (12 activities). Among the sports VHSL regulates are track & field and cross country (long-distance running). VHSL is comprised of and governed by government entities and representatives who agree to uphold its rules.

6.       In 2011, this Court held that VHSL's conduct constitutes state action subject to constitutional restrictions. *See McGee v. Va. High Sch. League, Inc.*, No. 2:11-cv-35, 2021 U.S. Dist. LEXIS 110270 (W.D. Va. Sept. 28, 2011).

2

7.     Defendant Roanoke County School Board ("RCSB" or "the School Board") is the public body that operates the public school system for Roanoke County, Virginia. It is a member of VHSL. RCSB participates in and enforces VHSL's rules for students competing in interscholastic high school athletics, including track & field and cross country. It carries out VHSL's policy of prohibiting S.P. from participating in VHSL-approved athletics. RCSB operates the public school district in which S.P. resides and would otherwise compete in track & field and cross country.

JURISDICTION AND VENUE

8.     The Court has subject-matter jurisdiction over the federal-law aspects of this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 1983 (civil action for deprivation of rights), as more particularly set out herein.

9.     The Court has subject-matter jurisdiction over the state-law aspects of this matter (Virginia Constitution Article I, § 16, and the Virginia Religious Freedom Restoration Act (Va. Code § 57-2.02)) pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because the state-law claims are sufficiently related to the federal-law claims in this action such that they form part of the same case or controversy.

10.    The Court has personal jurisdiction over VHSL because it is a corporation registered and actively doing business in Virginia and, through its registered agent for the service of process, it is present within Virginia as of the time this action commenced.

11.    The Court has personal jurisdiction over RCSB because it is a Virginia corporate body operating public schools in Virginia pursuant to Va. Code § 22.1-71.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and because defendants have their principal place of business in this district and both defendants reside in Virginia.

3

13. This Court is authorized to grant declaratory and injunctive relief under 42 U.S.C. § 1983, Va. Code §§ 57-2.02, 8.01-184 *et seq.*, and 8.01-620 *et seq.*

FACTS

### S.P.'s Education

14. S.P. is educated at home ("home schooled") and is currently a 9th grade student.

15. S.P. is home schooled under the annual "Notice of Intent" provision of Virginia Code § 22.1-254.1.

16. S.P. is one of over 66,000 home schooled students in Virginia during the 2025-2026 school year.

17. More than 89% of the home schooled students in Virginia for the 2025-2026 school year (59,055) are educated under the "Notice of Intent" provision of Virginia Code § 22.1-254.1.

18. Virginia Code § 22.1-254.1 establishes as "the policy of the Commonwealth of Virginia," that "[w]hen the requirements of this section have been satisfied, instruction of children by their parents is an acceptable alternative form of education."

19. Under the "Notice of Intent" statute, Va. Code § 22.1-254.1, a parent must: a) meet requisite qualifications to demonstrate he is able to provide home instruction for his child; b) notify the division superintendent annually of his intention to so instruct the child; and c) provide a description annually of the curriculum to be administered to his child.

20. Under Virginia's "Notice of Intent" statute, a parent must also provide the division superintendent following the school year with either (i) evidence that the child has attained a composite score in or above the fourth stanine on any nationally normed standardized achievement test, or an equivalent score on the ACT, SAT, or PSAT test, or (ii) an evaluation or assessment that the division superintendent determines to indicate that the child is achieving an adequate level of educational growth and progress, including (a) an evaluation letter from a person licensed to

4

teach in any state, or a person with a master's degree or higher in an academic discipline, having knowledge of the child's academic progress, stating that the child is achieving an adequate level of educational growth and progress or (b) a report card or transcript from an institution of higher education, college distance learning program, or home-education correspondence school.

21.    On behalf of S.P., the Palmers have submitted academic credentials, along with a list of subjects taught, to RCSB for home schooling annually since 2016.

22.    The Palmers have satisfied every element of Virginia's Notice of Intent home school statute each year they have home schooled S.P.

23.    S.P.'s current 9th grade course load includes eight subjects, which he completes during each regular weekday. They include: Algebra I with Geometry, Spanish I (through Liberty Online Academy), Economics, U.S. Government, English, Logic, Integrated Chemistry and Physics, and Piano.

24.    Section 28A-3-3 of VHSL's 2025-26 Handbook and Policy Manual states the following about home schooling: "Home schooling is a process through which Virginia Code compulsory education requirements may be met, as is private schooling. **Home schooling is the equivalent of school enrollment for purposes of future eligibility requirements such as** establishing residence for Transfer Rule purposes, and **determining whether the student has met Scholarship Rule requirements of having passed five academic subjects recognized by the Virginia Department of Education** in the most recent prior semester." (Emphasis added.)

25.    S.P. engages in academic studies five days a week, for a time commensurate with that of public school students.

26.    S.P.'s mother, Stacie Palmer, sits with him throughout most of the school day to teach him and monitor his progress.

5

27.     S.P. earns grades in most subjects based on his performance on regular tests and other assignments provided with the curriculum.

28.     Since 2017, S.P. has completed national standardized testing annually on core subjects, the results of which the Palmers have consistently provided to RCSB, in accordance with Va. Code § 22.1-254.1(C).

29.     S.P.'s recent academic performance, according to the California Achievement Test ("CAT"), a nationally recognized standardized test, from June 16, 2025, is as follows: Reading Composite: 99th percentile; Math Composite: 98th percentile; Language Composite: 99th percentile; Grade Equivalent: 13.6 in all subjects.

30.     Stacie Palmer is S.P.'s primary teacher. She holds a Bachelor of Science in Early Childhood Education from Virginia Tech, was a licensed public school teacher for 11 years, and earned a graduate-level gifted education endorsement from the University of Virginia.

31.     Daniel Palmer is S.P.'s secondary instructor. He holds a Bachelor of Arts degree in History and Political Science and a Master of Public Administration from Virginia Tech, as well as a Master of Divinity with Biblical Languages from Southeastern Baptist Theological Seminary.

32.     A significant and primary reason the Palmers home school S.P. is their religious beliefs as Bible-believing Christians. They believe educating S.P. at home provides them the best opportunity for him to learn, process, and assimilate content in ways that are consistent with and not contrary to his faith. They further believe sending S.P. to public school would expose him to worldviews, assumptions, and educational philosophies that are contrary to their faith. They believe God will judge their efforts as parents and educators of their children, and that home schooling is the way they can best steward their responsibility for S.P. They further believe they have a duty to raise their child in the nurture and admonition of the Lord. Their religious beliefs

6

lead them to home school their children because they believe it provides the best opportunity for them as parents to incorporate the Bible and Christian discipleship throughout the day, which they believe is commanded in Scripture (e.g., Deuteronomy 6 and Proverbs 22:6).

33.    Sending S.P. to a private Christian school, assuming that one would satisfy their religious convictions, would impose a burdensome monetary cost on the Palmers, which would cost at least twice as much as home schooling.

34.    There is no private Christian school in or near Roanoke County that participates in the VHSL.

### S.P.'s Running

35.    S.P. is a talented runner with a passion for track & field and cross country distance running.

36.    S.P. has competed in track & field and cross country meets and events both as an individual runner and as part of a home school track team throughout middle school, including against Roanoke County Public School teams.

37.    In track & field, S.P. has primarily competed in the 800-meter and 1600-meter races individually, and the 4x400-meter relay as part of a team. In cross country, he has run 5Ks on cross country courses.

38.    Daniel Palmer coached S.P.'s middle school track team last spring, comprised of boys and girls from 5th-8th grade. Except rarely on Saturday mornings, the team had no track to use, and it has never had access to hurdles or field equipment, such as a high-jump pit or long-jump pit, etc., so they could not field athletes in all the events. The team practiced at an area park on Tuesdays and Thursdays from 4:30-6:00 P.M.

39.    In 8th grade, the highlight of S.P.'s year athletically was competing as a home school student in the Cosmopolitan Invitational Track & Field Meet (May 1-3, 2025), a VHSL-sanctioned track meet at William Fleming High School in Roanoke, VA.

40.    As a middle school student, S.P. had also competed against public school students in track & field and cross country events through other local invitational meets, including the Northside Invitational (Northside High School in Roanoke, VA) and the Blacksburg Invitational (Blacksburg High School in Blacksburg, VA). He also competed in a track meet hosted at an area public school, Hidden Valley Middle School, in Roanoke, VA.

41.    VHSL sanctions the events and its rules govern individual and team participation in each of the invitationals mentioned above, in which S.P. competed.

42.    VHSL and RCSB knew that S.P. was a home schooled student when they allowed him to compete in VHSL-sanctioned track & field and cross country meets and invitationals as a middle school student.

43.    By competing in track invitational meets, a runner is able to compete "unattached"—individually, without a team affiliation—and the individual runner's times are recorded without affecting the scores or standing of public school teams who are competing.

44.    By participating in VHSL-sanctioned competitive running events in middle school, S.P. was able to log his official times with MileStat.com, which enabled him to track his progress by memorializing official run times that colleges are able to view for the purpose of recruiting and offering scholarships.

45.    MileStat.com is part of the nationwide MileSplit.com system, which is the exclusive system used by VHSL and the primary and most comprehensive database used by

college coaches for scouting, recruiting, and verifying performances in high school track & field and cross country in the United States.

46.    Without the ability to participate in competitive events sanctioned by VHSL, S.P. effectively has no way of logging official running times that can be verified and viewed by colleges. Thus, he has no generally accepted way of proving his running abilities to college recruiters.

47.    S.P. aspires to become a college runner after high school and to earn a scholarship for track & field and/or cross country.

48.    Likewise, without access to VHSL-sanctioned running events, S.P. has no viable way to engage in competitive running in track & field or cross country with his peers.

49.    Additionally for S.P., running competitively is not only a passion, but it is also a part of his medical treatment. A separate reason for why S.P. is home schooled is that he battles with PANS/PANDAS, a condition that causes sudden onset of neuropsychiatric symptoms like OCD (obsessive compulsive disorder), tics, anxiety, and behavioral changes in children, typically triggered by infections. Competitive running has been a huge part of S.P.'s fight for health, and his doctors advise that he continue running competitively because this is helping him mentally, as he is able to see his progress in competition that he is unable to facilitate otherwise.

50.    For S.P., competing and goal-setting, and meeting certain goals is a key part of helping him successfully manage his medical condition because of what happens in a real race that cannot be simulated otherwise, including the adrenaline, motivation, and competition. Competitive running has been the most effective method for S.P.'s treatment of his PANS/PANDAS.

### *Nature and Effect of Defendants' Exclusionary Policy*

51.    While S.P. competed in running against public school teams throughout middle school as a home schooler, now that he has entered high school, he has been denied the ability to

compete in VHSL track & field and cross country events for no other reason than his being home schooled.

52.    VHSL's policy (the "exclusionary policy") does not allow any home schooled student to participate in any VHSL-sponsored interscholastic athletic competitions, including track & field and cross country, regardless of the reasons for home schooling or the individual circumstances of the student.

53.    Section 28(A) of VHSL's 2025-26 Handbook and Policy Manual says that to be eligible to compete in the public school athletics environment, the participant must be a student enrolled in the school for which he represents.

54.    Section PM 28A-2-3 of VHSL's 2025-26 Handbook and Policy Manual, further interpreting who is an "eligible" student for VHSL-sanctioned teams/events, states: "Home School students are not eligible because they fail to meet the requirements of this rule."

55.    VHSL's exclusionary policy prohibits home school students from trying out for, practicing with, or competing with their local public high school team.

56.    On August 3, 2025, a VHSL representative informed Daniel Palmer in writing that, "At this time the VHSL Handbook, which is approved by all of our member schools," does not allow home schoolers to compete in VHSL-sanctioned events.

57.    RCSB is one of the member school districts that approved of the exclusionary policy in the VHSL Handbook.

58.    VHSL's policies allow public school students, as well as private school students, to participate in interscholastic high school athletic competitions, but not home schooled students.

59.    Even if a private school does not follow VHSL's rules, VHSL still allows for that private school to compete against Virginia public schools. Manual § PM 27-14-1(1).

10

60.    For students who attend Virginia's Governor's Schools that do not offer a student's desired sport, VHSL's policies establish that those students may participate in that sport at the public school associated with their residence. Manual § PM 28A-2-3(1).

61.    For students who, "through school board assignment attend[] a nonmember public school from which he/she will graduate," VHSL's Manual provides: "Such student shall be eligible to represent the high school serving the school district in which his/her parents reside." Manual § 28A-2-2.

62.    Even high school students who attend public school 100% virtually at home, through Virginia's Multidivision Online Provider Program, can participate in VHSL-sanctioned athletics.

63.    VHSL also allows VHSL-member schools to compete in interstate athletic competitions against teams from other states whose athletic associations allow home schooled students to compete on those teams (VHSL Handbook, 27-5).

64.    Additionally, RCPS permits home school students to attend some public-school classes through part-time public school enrollment. "Part Time Instruction," RCPS, https://www.rcps.us/academy/rcpsonline-academy/part-time-instruction (last visited Mar. 27, 2026).

65.    Because certain track & field events include team events and require access to certain facilities, S.P. is not able to practice at the same level as public school students who do have access to those facilities and teammates.

66.    S.P. desires to compete on his local high school track & field and cross country teams as other students in his school district can.

67. Alternatively, S.P. would like to compete individually in certain track & field and cross country events within his school district as an "unattached" runner.

68. But for VHSL and RCSB's exclusionary and discriminatory policy, S.P. would compete, or would at least try out, for his local public high school track and cross country team, or otherwise compete individually.

69. The circumstances outlined above have caused, and continue to cause, Plaintiffs irreparable harm that cannot be remedied at law.

**COUNT I**
**Fourteenth Amendment: Equal Protection**
**(42 U.S.C. § 1983)**

70. Plaintiffs hereby repeat and reallege each of the foregoing paragraphs as if fully stated herein.

71. The Fourteenth Amendment of the United States Constitution provides, in relevant part, that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

72. This clause serves as a directive to governmental decisionmakers that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985).

73. VHSL and RCSB are state actors constrained by the Equal Protection Clause.

74. In all relevant respects, S.P. is similarly situated to the 9th grade students who attend Roanoke County public schools. He resides within Roanoke County and has maintained exceptional academic performance.

75. By policy, Defendants knowingly and intentionally exclude all home schoolers from interscholastic athletic participation.

76.     VHSL's exclusionary policy (i.e. regulation or custom), and RCSB's recognition and enforcement of that policy, denies S.P. the equal protection of the law as it pertains to access to interscholastic athletic participation, especially since other Virginia high school students attending both public schools (including 100% virtual education from home) and private schools are permitted to participate in interscholastic high school sports.

77.     VHSL's exclusionary policy, both on its face and as applied to S.P., cannot be justified by any level of scrutiny.

## COUNT II
### Virginia Constitution: Free Exercise of Religion
### (VA. CONST. ART. I § 16)

78.     Plaintiffs hereby repeat and reallege each of the foregoing paragraphs as if fully stated herein.

79.     Article 1, Sec. 16 of the Constitution of Virginia provides, in relevant part:

That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and charity towards each other. No man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever, nor shall be enforced, restrained, molested, or burthened in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; but all men shall be free to profess and by argument to maintain their opinions in matters of religion, and the same shall in nowise diminish, enlarge, or affect their civil capacities.

80.     Defendants' exclusionary policy impermissibly burdens Plaintiffs' religious beliefs and practice since a significant and primary reason the Palmers home school S.P. is that their religious convictions lead them to do so, and yet the exclusionary policy prevents S.P from competing in track & field and cross country meets with his high school peers.

13

81.    S.P.'s competing in track & field and cross country against his high school peers who live in the same school district, simply because he is educated by his parents at home for religious reasons, can in no way qualify as "break[ing] out into overt acts against peace and good order."

82.    Plaintiffs' civil capacity to participate in a public benefit (i.e. opportunity to compete in interscholastic high school sports) is diminished, and in fact denied by Defendants' exclusionary policy, because of Plaintiffs' religious convictions to choose education at home over education in a public or private school for S.P.

83.    Virginia Constitution Article I, Section 16 requires Defendants to accommodate Plaintiffs' religious beliefs in the manner in which they administer the exclusionary policy, but Defendants have failed to do so.

## COUNT III
### Virginia Religious Freedom Restoration Act
### (VA. CODE § 57-2.02)

84.    Plaintiffs hereby repeat and reallege each of the foregoing paragraphs as if fully stated herein.

85.    Virginia Code § 57-2.02(B) prohibits Virginia's government from substantially burdening a person's free exercise of religion, "even if the burden results from a rule of general applicability" unless the government demonstrates that "application of the burden to the person is (i) essential to further a compelling governmental interest and (ii) the least restrictive means of furthering that compelling governmental interest."

86.    "Substantially burden" means "to inhibit or curtail religiously motivated practice." Va. Code § 57-2.02(A).

14

87.    "Exercise of religion" includes the exercise of religion under Article I, Section 16 of the Constitution of Virginia, the Virginia Act for Religious Freedom (Va. Code § 57-1 et seq.), and the First Amendment to the United States Constitution. Va. Code § 57-2.02(A).

88.    The Virginia Act for Religious Freedom (§ 57-1), provides:

The General Assembly, on January 16, 1786, passed an act in the following words:

"Whereas, Almighty God hath created the mind free; that all attempts to influence it by temporal punishment, or burthens, or by civil incapacitations, tend only to beget habits of hypocrisy and meanness, and are a departure from the plan of the Holy Author of our religion, who, being Lord both of body and mind, yet chose not to propagate it by coercions on either, as was in his Almighty power to do; . . . that our civil rights have no dependence on our religious opinions any more than our opinions in physics or geometry; . . . that it is time enough for the rightful purposes of civil government, for its officers to interfere, when principles break out into overt acts against peace and good order… :

"Be it enacted by the General Assembly, That no man shall be compelled to frequent or support any religious worship, place or ministry whatsoever, nor shall be enforced, restrained, molested or burthened, in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; but that all men shall be free to profess, and by argument to maintain, their opinions in matters of religion, and that the same shall in no wise diminish, enlarge or affect their civil capacities.

". . . we are free to declare, and do declare, that the rights hereby asserted are of the natural rights of mankind; and that if any act shall be hereafter passed to repeal the present, or to narrow its operation, such act will be an infringement of natural right."

89.    Virginia Code § 57-2 provides that: "The General Assembly does hereby declare again that the rights asserted in § 57-1 are the natural and unalienable rights of mankind and this declaration is the policy of the Commonwealth of Virginia."

90.    Defendants' exclusionary policy substantially burdens, inhibits, and curtails Plaintiffs' religiously motivated practices by denying S.P. the opportunity to participate in competitive interscholastic sports with his high school peers, simply because his parents educate him at home based on their religious convictions.

15

91.    Defendants have not demonstrated, by clear and convincing evidence, that the application of the burden imposed on Plaintiffs by their exclusionary policy is both "essential to further a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest."

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

A.    Declare Defendants' exclusionary policy, both on its face and as applied to S.P., an unconstitutional violation of the U.S. Constitution's Equal Protection Clause.

B.    Declare Defendants' exclusionary policy an unconstitutional violation of Art. 1, § 16 of the Constitution of Virginia and Va. Code § 57-2.02.

C.    Issue preliminary and permanent injunctive relief enjoining Defendants from enforcing VHSL's exclusionary policy against S.P.

D.    Award Plaintiffs compensatory damages.

E.    Award Plaintiffs nominal damages.

F.    Award Plaintiffs' attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and Va. Code § 57-2.02(D), and their costs pursuant to Va. Code 8.01-190.

**DANIEL PALMER, STACIE PALMER, and
S.P., by his parents and next friends,
DANIEL and STACIE PALMER
By Counsel:**

 /s/ Joshua A. Hetzler
Joshua A. Hetzler, Esq. (VSB No. 89247)
Michael B. Sylvester, Esq. (VSB No. 95023)
FOUNDING FREEDOMS LAW CENTER
707 E. Franklin Street
Richmond, VA 23219
Telephone: (804) 971-5509
josh@foundingfreedomslaw.org
michael@foundingfreedomslaw.org
*Counsel for Plaintiffs*

16

## **VERIFICATIONS**

Pursuant to 28 U.S.C. §1746 and Va. Code §§ 8.01-4.3 and 8.01-628, I declare under penalty of perjury that the foregoing factual allegations pertaining to me as set forth in this Verified Complaint are true and correct to the best of my knowledge.

_____          3/28/26
DANIEL PALMER                             Date

_____          3/28/26
STACIE PALMER                             Date

_____          3/28/26
S.P.                                      Date

17