IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 27, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ E. Jones
DEPUTY CLERK

DANIEL PALMER, et al.,            )
      Plaintiffs,            )
                )
v.            )            Civil Action No. 7:26-cv-00260
                )
VIRGINIA HIGH SCHOOL            )            By: Elizabeth K. Dillon
LEAGUE, INC., et al.,            )                Chief United States District Judge
      Defendants.            )

**MEMORANDUM OPINION**

Plaintiffs Daniel Palmer, Stacie Palmer, and their child, S.P. (collectively "Palmers"),

bring this action against defendants Virginia High School League, Inc. ("VHSL") and Roanoke

County School Board ("RCSB") (collectively "defendants"), alleging that defendants' policy

barring homeschooled students from participating in public-school athletics unlawfully

discriminates against the Palmers, who homeschool S.P., primarily for religious reasons. The

Palmers bring three claims against defendants. The first is a federal claim under the Equal

Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, based on S.P's

status as a homeschooled student. The second and third are Virginia state-law claims based upon

religious freedom: a Free Exercise of Religion claim under Article I, Section 16 of the

Constitution of Virginia; and a claim under the Virginia Religious Freedom Restoration Act

("VRFRA"), Virginia Code § 57-2.02.[1] Pending before the court is the Palmers' motion for a

preliminary injunction. (Dkt. No. 3.) The matter has been fully briefed and argued before the

court. For the reasons that follow, the court will decline to exercise supplemental jurisdiction

---

[1] The Equal Protection claim is asserted solely on behalf of S.P., while the two Virginia state-law claims are asserted on behalf of all three plaintiffs.

over the Virginia state-law religious freedom claims and will deny the Palmers' motion for a preliminary injunction as to the federal Equal Protection claim.

## I.  BACKGROUND

S.P. is a homeschooled ninth-grade student.  (Compl. ¶ 1, Dkt. No. 1.)  Mr. and Mrs. Palmer have chosen to educate S.P. at home primarily because of their religious beliefs as "Bible-believing Christians."  (*Id.* ¶ 32.)  Specifically, they allege that "[t]heir religious beliefs lead them to home school their children because they believe it provides the best opportunity for them as parents to incorporate the Bible and Christian discipleship throughout the day, which they believe is commanded in Scripture."  (*Id.*)

S.P. is a distance runner who competed in track & field and cross country throughout middle school, both individually and as part of a homeschool team.  (*Id.* ¶¶ 35–36.)  By participating in official events in middle school, S.P. "was able to log his official times with MileStat.com, which enabled him to track his progress by memorializing official run times that colleges are able to view for the purpose of recruiting and offering scholarships."  (*Id.* ¶ 44.)  S.P. aspires to be a college runner and to earn a scholarship for track & field and/or cross country after finishing high school.  (*Id.* ¶ 47.)

Now a high school student, S.P. has been denied the ability to compete in public-school track & field and cross-country events solely because he is homeschooled.  (*Id.* ¶ 51.)  This is because VHSL, the governing body of Virginia public high school interscholastic sports, has a policy that prohibits homeschooled students from participating in VHSL-sponsored interscholastic competitions.  (*Id.* ¶¶ 52–55.)  This policy, which is part of VHSL's 2025–26 Handbook and Policy Manual, is approved by all VHSL member schools.  RCSB is the public body that operates the public school system for Roanoke County, Virginia—where the Palmers

reside—and is a member of VHSL, thus adopting its rule prohibiting homeschooled students from participating in public high school sports.  (*Id.* ¶¶ 7, 56–57.)  At the same time, however, VHSL permits many other categories of students to participate in interscholastic high school athletics, including private school students who meet certain criteria; students attending Virginia Governor's Schools that do not offer a student's desired sport, who may compete for their local public school associated with their residence; students assigned by a school board to nonmember schools, who may compete for the high school serving the school district in which his/her parents reside; and students who attend public school 100% virtually at home through Virginia's Multidivision Online Provider Program.  (*Id.* ¶¶ 58–62.)

The Palmers allege that this policy is exclusionary, discriminatory, and continues to cause him irreparable harm.  (*Id.* ¶ 69.)  Specifically, they contend that the policy violates the Equal Protection Clause of the United States Constitution, the Free Exercise Clause in Article I, Section 16 of the Constitution of Virginia, and the VRFRA.  The Palmers assert that, without the ability to participate in VHSL competitions, S.P. "has no way of logging official running times that can be verified and viewed by colleges" and, therefore, "has no generally accepted way of proving his running abilities to college recruiters."  (*Id.* ¶ 46.)  They also allege that, without access to VHSL-sanctioned events, he lacks any viable opportunity to engage in competitive running with his peers.  (*Id.* ¶ 48.)  In addition, the Palmers allege that competitive athletics forms part of the treatment and management of S.P.'s medical condition.  (*Id.* ¶ 49.)  Specifically, they contend that "competing and goal-setting, and meeting certain goals is a key part of helping him successfully manage his medical condition because of what happens in a real race that cannot be simulated otherwise, including the adrenaline, motivation, and competition."  (*Id.* ¶ 50.)

The Palmers seek relief permitting S.P. to compete on, or at a minimum try out for, his local public high school track & field and cross-country teams as other students in his district are allowed to do.  Alternatively, they seek permission for S.P. to compete individually in certain events as an "unattached" runner.  The Palmers request preliminary and permanent injunctive relief enjoining defendants from enforcing VHSL's exclusionary policy against him.  (*Id.* ¶¶ 66–69; *id.* at 16.)

## II.  DISCUSSION

As noted above, the Palmers bring three claims against defendants: (1) a 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection claim; (2) a Free Exercise of Religion Claim under Article I, Section 16 of the Constitution of Virginia; and (3) a VRFRA claim under Virginia Code § 57–2.02.  The court has federal question jurisdiction under 28 U.S.C. § 1331 as to the Equal Protection claim, and supplemental jurisdiction under 28 U.S.C. § 1367 as to the Virginia state-law claims.  However, district courts may decline to exercise supplemental jurisdiction over a claim under certain circumstances.  Therefore, before evaluating the preliminary injunction motion, the court will first determine whether it will exercise supplemental jurisdiction over the two Virginia state-law claims.

### A.  Virginia State-Law Religious Claims

The Palmers' Virginia Constitutional claim and the VRFRA claim are distinct, but closely related.  In both claims, the Palmers contend that the exclusionary policy unlawfully burdens their religious exercise by denying S.P. the opportunity to participate in interscholastic track & field and cross-country competitions because they homeschool him for religious reasons. They contend that their decision to educate S.P. at home is motivated by sincere religious convictions, and that the policy denies him a public benefit available to other students in the

district.  The complaint further alleges that Virginia law requires defendants to accommodate, rather than burden, the Palmers' religiously motivated educational choices.  (Compl. ¶¶ 78–90.) The Palmers allege that defendants have not shown that the policy is both "essential to further a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest."  (*Id.* ¶ 91.)  Because these claims raise novel questions of Virginia state law and the claims substantially predominate over the Equal Protection claim, the court will decline to exercise supplemental jurisdiction over them.

### 1.  Legal standard

In cases where a district court has original jurisdiction, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  "Once any of these factors is satisfied, the district court possesses the discretion to dismiss supplemental claims[.]"  *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015); *see also Hunter by Conyer v. Est. of Baecher*, 905 F. Supp. 341, 343 (E.D. Va. 1995) (noting that the language of § 1367(c) is discretionary).  The Supreme Court has emphasized that "when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial

economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

**2. Analysis**

Although supplemental jurisdiction was neither briefed nor discussed at oral argument, the parties' representations and the court's independent research reveal that the Free Exercise claim under Article 1, Section 16 of the Constitution of Virginia and the VRFRA claim present novel issues of Virginia state law and substantially predominate over the federal Equal Protection claim, thereby satisfying the first two provisions of under 28 U.S.C. § 1367(c).

To begin, *Vlaming v. West Point School Board*, 895 S.E.2d 705 (Va. 2023), is the controlling Supreme Court of Virginia case that lays the framework for a Free Exercise claim under Article 1, Section 16 of the Constitution of Virginia. There, Peter Vlaming, a French teacher at West Point High School, was fired because he refused to refer to a biologically female student by male pronouns in accordance with school policy regarding the student's gender identity and pronoun usage. Vlaming contended that using the masculine pronouns would have violated his sincerely held religious beliefs. He asked for an accommodation to continue using the student's preferred name (both in English and the student's chosen French name for class), and to avoid using any third-person pronouns when referring to the student. As alleged, the School Board rejected Vlaming's accommodation and compelled him to use the student's preferred pronouns rather than using only the student's preferred name. Vlaming brought a variety of claims against the School Board, including a Free Exercise claim under Article I, Section 16 of the Constitution of Virginia and a claim under the VRFRA. The lower court dismissed all of the claims, finding that Vlaming failed to state legally viable causes of action. The Supreme Court of Virginia reversed.

The court first examined, in great depth, religious liberty protections afforded under the

Constitution of Virginia.  It noted:

> Article I, Section 16 of the Constitution of Virginia plainly declares that "all men are equally entitled to the free exercise of religion, according to the dictates of conscience." Among other things, this means that "[n]o man . . . shall be enforced, restrained, molested, or burthened in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief" and that "all men shall be free to profess and by argument to maintain their opinions in matters of religion, and the same shall in nowise diminish, enlarge, or affect their civil capacities."  Va. Const. art. I, § 16.

*Vlaming*, 895 S.E.2d at 717.  The court observed that the Free Exercise Clause in the

Constitution of Virginia provides broader protections for religious liberty than the Free Exercise

Clause in the Constitution of the United States, as interpreted in *Employment Division v. Smith*,

494 U.S. 872, 878–79 (1990).[2]  It emphasized that "[n]o State has more jealously guarded and

preserved the questions of religious belief and religious worship as questions between each

individual man and his Maker than Virginia."  *Id.* at 716 (citing *Jones v. Commonwealth*, 38

S.E.2d 444, 448 (Va. 1946)).  It also noted that, "Because of the marked textual differences

between the religion clauses of the First Amendment of the United States Constitution and the

free-exercise provisions of the Constitution of Virginia, interpretations of the former inform but

do not necessarily govern the construction of the latter."  *Id.* at 717.  Relying on Virginia's

constitutional text, historical context, and Thomas Jefferson's 1786 Act for Religious Freedom,

the court articulated that the proper inquiry at the demurrer stage is:

> Whether [plaintiff's] sincerely held religious beliefs caused him to commit overt acts that "invariably posed some substantial threat to public safety, peace or order," and if so, whether the government's compelling state interest in protecting the public from that threat,

---

[2]  In *Employment Division v. Smith,* the United States Supreme Court held that a neutral law of general applicability does not violate the Free Exercise Clause of the First Amendment even when it incidentally burdens religious exercise.  494 U.S at 878–82.

> when examined under the rigors of strict scrutiny, could be satisfied
> by "less restrictive means."

*Vlaming*, 895 S.E.2d at 723 (citation modified).

The court noted that it "need not catalogue" for resolving the appeal "the subset of 'overt acts' that would forfeit an individual's constitutional right to free exercise of religion and relieve the government from any constitutional duty of accommodation." *Id.* Nor did the court find it "necessary to speculate on putative compelling state interests in other contexts." *Id.* Applying the standard to the factual allegations in Vlaming's complaint and drawing all reasonable inferences therefrom, the court found that he had alleged a viable Free Exercise claim under Article I, Section 16 of the Constitution of Virginia. *Id.* at 724.

The Supreme Court of Virginia also found that the circuit court erred in dismissing Vlaming's VRFRA claim under Virginia Code § 57–2.02. The court first set out the burdens of proof under the statute:

> The core provision of the VRFRA announces a general rule and a narrow exception. The general rule states that "[n]o government entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability." Code § 57-2.02(B). The narrow exception adds that a violation of the general rule will only be excused if the government "demonstrates that application of the burden to the person is (i) essential to further a compelling governmental interest and (ii) the least restrictive means of furthering that compelling governmental interest." *Id.*
>
> The VRFRA is quite specific about who must prove what. The claimant has the initial obligation to show that the government "substantially burden[ed]" the "free exercise of religion," *id.*, which includes any act that "inhibit[ed] or curtail[ed]" the "religiously motivated practice," Code § 57-2.02(A). If the claimant makes that prima facie showing, the government then has "the burdens of going forward with the evidence and of persuasion under the standard of clear and convincing evidence," *id.*, to show that the specific "application of the [government's] burden to the person is (i) essential to further a compelling governmental interest and (ii) the least restrictive means of furthering that compelling governmental interest," Code § 57-2.02(B).

8

*Vlaming*, 895 S.E.2d at 734–35.

Much like the constitutional claim, the court then noted the heightened protections under the VRFRA compared to its federal counterpart, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4.

> Unlike the VRFRA, the federal RFRA does not require the government to prove that its contested actions be "essential" to the furtherance of "a compelling governmental interest." *Compare* Code § 57-2.02(A)-(B), with 42 U.S.C. § 2000bb-1. Nor does the federal RFRA require the government to prove the essentiality of its compelling interest by "clear and convincing evidence," *see* 42 U.S.C. § 2000bb-1, a heightened standard of evidentiary proof.

*Vlaming*, 895 S.E.2d at 735.  However, the court emphasized that the VRFRA and the RFRA are similar in one critical respect: both impose an "exceptionally demanding" least-restrictive-means standard.  *Id.*  Applying this standard, the Supreme Court of Virginia held that Vlaming had adequately alleged a viable statutory claim under the VRFRA.

The court then addressed the School Board's argument that Vlaming's VRFRA claim was barred by Virginia Code § 57-2.02(E), which preserves governmental authority to maintain "health, safety, security or discipline," and therefore operates as a categorical exemption from the statute's reach.  *Vlaming*, 895 S.E.2d at 735–36.  The court rejected this interpretation, explaining that if read broadly, the exemption "would apply to nearly all government actions" because "[m]ost, if not all, laws, policies, or actions could plausibly be said to promote 'health, safety, security, or discipline' in some manner."  *Id.* at 736.  Such a reading would "eviscerate" the VRFRA, "render[ing] it a dead letter and defeat its essential purpose."  *Id.* (citation omitted).

The court stopped short of "demark[ing] with specificity the conceptual boundaries of [Virginia] Code § 57-2.02(E)."  *Id.*  Nevertheless, it concluded that Vlaming's allegations—that "the School Board fired Vlaming because he had referred to a student only by the student's preferred name, avoided the use of any third-person pronouns, and refused to use the

9

government-mandated pronouns"—do not fall within "subsection E as a wholesale exemption from the VRFRA's reach." *Id.* It further emphasized that the "literal text, historical context, and essential purpose of the VRFRA cannot so easily be set aside." *Id.*

From this court's reading of *Vlaming*, Article I, Section 16 of the Constitution of Virginia and the VRFRA provide far broader protections for religious liberty than their federal counterparts. However, the outer limits of those protections are not clearly defined. As noted above, the Supreme Court of Virginia did not "catalogue . . . the subset of 'overt acts' that would forfeit an individual's constitutional right to free exercise of religion and relieve the government from any constitutional duty of accommodation." *Vlaming*, 895 S.E.2d at 723. Nor did it find it "necessary to speculate on putative compelling state interests in other contexts." *Id.* Likewise, the court stopped short of "demark[ing] with specificity the conceptual boundaries of [Virginia] Code § 57-2.02(E)" of the VRFRA. *Id.* at 736. Thus, applying these standards to the Palmers' claims against the defendants in this case presents difficult and unresolved questions of Virginia law. While this court often considers state-law matters, some of which are unsettled, considerations of judicial economy, convenience, fairness, and comity lead the court to decline exercising supplemental jurisdiction over the Virginia state-law claims here. Those claims raise novel and undeveloped issues of Virginia constitutional and statutory law that are best left to the courts of the Commonwealth to resolve.

In support of exercising this discretion to decline supplemental jurisdiction, the court notes that neither it nor the parties are aware of any post-*Vlaming* case law applying the standards articulated in *Vlaming* to either a Free Exercise claim or a VRFRA claim. The court has found no case law addressing the conferral of an attenuated public benefit—akin to the opportunity to participate in high school athletics—in the context of a religiously motivated

practice, which is at the heart of this case.  The Palmers bring these claims because they argue that their decision to homeschool S.P. for religious reasons deprives them of the benefit of participating in public-school athletics.  In support, they cite Supreme Court jurisprudence that recognizes that the government may not deny a public benefit on a basis that infringes constitutionally protected interests.  *See Perry v. Sindermann*, 408 U.S. 593, 598 (1972) (finding a genuine dispute over whether a school declined to renew a teacher's contract in retaliation for his protected First Amendment speech criticizing the school's Board of Regents); *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 713–19 (1981) (holding that the state of Indiana violated the Free Exercise Clause of the First Amendment by denying unemployment benefits to a Jehovah's Witness who quit his job because his sincere religious beliefs prohibited him from participating in the production of weapons).[3]  But, the connection between the public benefit at issue here and the asserted religious practice is significantly more attenuated than in cases where courts have found a constitutional violation.  Moreover, although *Perry* and *Thomas* provide some guidance regarding the meaning of "benefits" under federal First Amendment jurisprudence, neither suggests that those protections extend so far as to encompass a religiously motivated homeschooled student's access to public-school athletics under Virginia constitutional and statutory law.

And while *Vlaming* indicates that the Constitution of Virginia provides heightened protections for religious liberty, it remains unclear what the outer bounds of those protections are.  The Palmers have committed the "overt act" of homeschooling S.P.  They are deprived the

---

[3] Although these cases address the First Amendment to the United States Constitution, *Vlaming* makes clear that the Constitution of Virginia affords broader protections for religious liberty.  Accordingly, federal First Amendment decisions interpreting the United States Constitution "inform but do not necessarily govern" the interpretation of the Constitution of Virginia.  *Vlaming*, 895 S.E.2d at 717.  The court further notes that *Perry* involved protections for free speech, not free exercise of religion.

11

"benefit" of participation in VHSL-sponsored athletics.  However, this is not the same type of "overt act" that led to Vlaming's termination.  Vlaming refused to call a student by the student's preferred pronouns because doing so conflicted with his religious beliefs, and he lost his job as a result.  Here, by contrast, the burden arises indirectly from eligibility requirements associated with participation in VHSL-sponsored athletics—a burden that applies to all homeschooled students, not just students who are homeschooled for religious reasons.  It is therefore unclear whether participation in public-school athletics bears a sufficiently direct relationship to the Palmers' religious exercise to support a viable Free Exercise claim under the Constitution of Virginia.  Nor is it clear whether exclusion from public-school sports "substantially burdens" the religious exercise of a student who is homeschooled for religious reasons under the VRFRA. Those unresolved questions are central to this case.  Federal precedent does not provide a clear answer, and neither the parties nor this court is aware of any Virginia Supreme Court or lower court decision that has addressed these questions.

Moreover, adopting the Palmers' theory could have implications extending well beyond interscholastic athletics.  If participation in public-school sports is a protected benefit at all, it is a benefit *indirectly* connected to the religious practice of home schooling.  If it is sufficient to support a Free Exercise or the VRFRA claim, it is unclear what other school-related benefits might also be constitutionally or statutorily required, such as transportation, facilities access, or even school lunches.  And if such benefits are constitutionally compelled for religiously motivated homeschooled students, further questions arise as to whether the same benefits must also be extended to nonreligious homeschooled students.

Ultimately, *Vlaming* underscores the breadth of religious liberty protections under Virginia law, but it leaves unresolved the precise contours of those protections, which may

extend to the Palmers in this case.  However, determining the scope of those protections is best left to the courts of the Commonwealth to develop in the first instance.  Although considerations of judicial economy and convenience weigh in favor of exercising supplemental jurisdiction over the Virginia state-law claims alongside S.P.'s Equal Protection claim, at this stage of the case, those factors are outweighed by the interests of fairness and comity.  "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *In re Conklin*, 946 F.2d 306, 322 (4th Cir. 1991) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Women Prisoners of D.C. Corr. v. District of Columbia*, 93 F.3d 910, 922 (D.C. Cir. 1996) ("[T]he proper function of a federal court is to ascertain what the state law is, not what it ought to be . . .  and . . . a federal court should be reluctant to retain pendent jurisdiction over a question for which state jurisprudence gives inadequate guidance." (citation modified)).

Furthermore, the court finds that the Virginia state-law claims substantially predominate in this case.  In determining whether state-law claims substantially predominate, courts may consider  "whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."  *Gibbs*, 383 U.S. at 726–27.  "Generally, a district court will find substantial predomination where a state claim constitutes the real body of a case, to which the federal claim is only an appendage—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog."  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003) (citation modified).

This is such a case.  The Equal Protection claim is governed by the more deferential

rational basis standard (*see infra* Section II.B), whereas the Free Exercise and the VRFRA claims require strict scrutiny analysis and resolution of unresolved questions of Virginia constitutional and statutory law.  Moreover, the Equal Protection claim does not turn on religious liberty principles.  Rather, it concerns the broader classification of homeschooled students.

Based on the allegations in the complaint, the court concludes that the crux of this case lies in the Virginia religious-liberty claims, which both predominate over the federal claim and raise novel issues of state law.  Accordingly, the court finds it appropriate to separate those claims at this early stage of the litigation by declining to exercise supplemental jurisdiction.  Thus, the claims arising under the Virginia Constitution and the VRFRA will be dismissed without prejudice.[4]

## B.  Federal Equal Protection Claim

Having dismissed the Virginia state-law claims, the court must now determine whether a preliminary injunction is warranted for the Equal Protection claim.  S.P. alleges that defendants' policy of excluding him and all homeschool students from public-school sports violates the Equal Protection Clause of the Fourteenth Amendment.  Because the court finds that S.P. is unlikely to succeed on the merits of the Equal Protection claim, it will deny his motion for a preliminary injunction.

### 1.  Legal standard

A preliminary injunction is an "extraordinary and drastic remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *2311 Racing LLC v.*

---

[4] The court recognizes that S.P. seeks a preliminary injunction to participate in the last remaining track meets of this season.  However, as defendants noted during oral argument, the Palmers waited until after both the fall cross-country season and the winter indoor track season before filing this action.  Therefore, the irreparable harm that the Palmers claim to be suffering likely does not bear out based on this timeline.  In any event, allowing the Palmers to pursue their Virginia state-law claims in Virginia state courts will still leave time for resolution before the next cross-country season begins at the start of S.P.'s sophomore year of high school.

*NASCAR, LLC*, 139 F.4th 404, 408 (4th Cir. 2025) (citation modified). "[I]t should be 'granted only sparingly and in limited circumstances.'" *Id.* (citing *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)). To obtain such an injunction, the plaintiff must make a clear showing that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 2. Analysis

S.P. argues that he is likely to succeed on the merits of his Equal Protection claim because he is similarly situated to his public-school peers, yet he is being intentionally excluded from high school athletics solely because of his status as a homeschooled student. He further contends that the defendants' exclusionary policy is not rationally related to any legitimate governmental interest. (*See generally* Dkt. No. 4, at 8–12; Dkt. No. 12, at 2–12.) The defendants challenge these arguments on all grounds, contending that S.P. is not similarly situated to his public-school peers, that S.P. cannot establish intentional discrimination, and that, even if he could, the Equal Protection claim cannot survive rational-basis review. (*See generally* Dkt. No. 11, 12–15.)

The Equal Protection Clause of the Fourteenth Amendment provides that: "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Clause requires that similarly-situated individuals be treated alike." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citing *City of Cleburne v. Cleburne City Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful

15

discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  If this showing is made, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* (citations omitted).

The parties agree that, because there is no fundamental right or suspect classification at issue, rational basis review is the appropriate level of constitutional scrutiny to employ.  Under this level of scrutiny, "the plaintiff must establish that the challenged policy is not 'rationally related to legitimate government interests.'" *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 879 (4th Cir. 2023) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979)).  "Classifications under rational basis review are 'accorded a strong presumption of validity' and must be upheld 'if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification.'" *Wilkins v. Hegseth*, 167 F.4th 237, 242 (4th Cir. 2026) (emphasis in original) (citing *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)).  "Thus, the rational basis standard of review is 'a relatively relaxed standard.'" *Id.* (citing *United States v. Skrmetti*, 605 U.S. 495, 522 (2025)).

Assuming, without deciding, that S.P is similarly situated to his public-school peers and was intentionally discriminated against because he was homeschooled, the court nonetheless denies S.P's motion for a preliminary injunction because he has failed to show that his Equal Protection claim is likely to survive rational-basis review.

Defendants have provided several rationales for their policy of excluding homeschooled students from participation in VHSL-sponsored competitions.  The court does not detail all those rationales here, but it finds two particularly persuasive at this stage of the case.

The first rationale relates to costs.  Roanoke County Public Schools ("RCPS") receives approximately $8,500 to $9,000 per enrolled student from the state, a portion of which is

16

allocated to athletic programming, facilities, transportation, equipment, coaches, referees, and staff.  (RCPS Superintendent Decl. ¶ 13, Dkt. No. 11-2.)  For the 2025 fiscal year, expenditures for athletic programs amounted to over $2.4 million.  (*Id.*)  Although the parents of homeschooled children certainly pay taxes, because homeschooled students are not enrolled in the public-school system, the public schools do not receive state funding attributable to those students.  (*Id.*)  Additionally, VHSL member schools pay fees to cover VHSL's catastrophic insurance premiums.  Homeschooled students are not covered under this insurance policy, and it is unknown how the premiums would be affected if coverage were extended to homeschooled students who are subject to less stringent health, safety, and disciplinary requirements compared to students attending VHSL member schools.  (VHSL Executive Director Decl., ¶ 6, Dkt. No. 11-1.)

As the Palmers conceded at the hearing, funding considerations are a legitimate concern. *Cf. Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861, 888 (E.D. Va. 2012) ("Conserving government resources is certainly a legitimate government interest." (citing *Mitchell v. Apfel*, 19 F. Supp. 2d 523, 529 (W.D. N.C. 1998) (collecting cases)).  S.P. argues, though, that this is not a genuine concern, as he is willing to pay a participation fee.  But it is not the court's job to determine the best reason for the policy, rather it is the court's job to determine if the policy is rational.  *See Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 295 (4th Cir. 2007) ("The 'rational' aspect of rational basis review refers to a constitutionally minimal level of rationality; it is not an invitation to scrutinize either the instrumental rationality of the chosen means (i.e., whether the classification is the best one suited to accomplish the desired result), or the normative rationality of the chosen governmental purpose (i.e., whether the public policy sought to be achieved is preferable to other possible

17

public ends).").  Requiring RCSB and VHSL to expend funds to support homeschooled athletic participation without receiving corresponding enrollment-based funding would be a financial burden.  As such, there is a reasonably conceivable basis for excluding homeschooled students from VHSL-sponsored competitions.  *Cf. Jones v. W. Va. State Bd. of Educ.*, 622 S.E.2d 289, 296–97 (W. Va. 2005) (holding that excluding homeschooled students from interscholastic athletics was rationally related to the legitimate interest in preserving school athletics funding systems tied to public school enrollment and attendance, because homeschooled students did not contribute to those funding calculations, thereby defeating an Equal Protection claim under the West Virginia Constitution).

The court also finds persuasive defendants' arguments regarding the logistical and competitive challenges associated with permitting homeschooled students to participate in VHSL athletics.  Under the current system, and in order to maintain competitive balance, schools with larger enrollments compete against similarly sized schools, while smaller schools compete against one another.  If homeschooled students were permitted to participate, the VHSL would need to decide whether those students should count toward a school's enrollment numbers even though they are not actually enrolled in the school.  Counting all homeschooled students within a "high school zone" could artificially inflate a school's enrollment and force it into a higher competitive division, potentially disadvantaging the students who are actually enrolled.  On the other hand, if homeschooled students were allowed to play without being counted toward enrollment totals, schools could gain a competitive advantage by drawing from a larger pool of athletes without moving into a higher classification.  (VHSL Executive Director Decl., ¶¶ 7–8.)

Defendants also argue that counting only those homeschooled students who participate in sports, on a sport-by-sport or season-by-season basis, would require the VHSL to overhaul its

18

entire classification and scheduling system, which currently operates on annual, school-wide enrollment figures.  They further contend that S.P.'s  proposed alternative of allowing homeschooled students to compete "unattached" is impractical because it may work for individual sports like track or swimming, but not for team sports such as football, soccer, or volleyball.  Moreover, the unattached model would also create fairness concerns if homeschooled students were allowed to choose the class level in which they compete, as enrolled students have no such option.  (VHSL Executive Director Decl. ¶¶ 8–10.)

Courts have upheld VHSL eligibility rules under rational basis review where the rules are tied to legitimate administrative and anti-recruiting objectives.  *McGee v. Va. High Sch. League*, 801 F. Supp. 2d 526, 530 (W.D. Va. 2011) (denying a preliminary injunction on an Equal Protection claim, finding that the VHSL Transfer Rule was rationally related to legitimate interests, including discouraging athletic recruiting and encouraging students to attend school in their parents' resident district); *see also Denis J. O'Connell High School v. Va. High Sch. League*, 581 F.2d 81, 82–88 (4th Cir. 1978) (holding that excluding private schools from VHSL membership was rationally related to legitimate concerns regarding recruiting, transfer and eligibility enforcement, and competitive pressures associated with school choice based on athletics).  Here, the classification system currently employed by VHSL and adopted by RCSB, which is in place to encourage fair competition, provides a reasonably conceivable basis for excluding homeschooled students.

Ultimately, it is this court's job to determine "if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification."  *Wilkins*, 167 F.4th at 242 (emphasis in original).  The rationales discussed above provide reasonably conceivable grounds supporting the exclusion of homeschooled students from participation in public-school athletics.

19

Given the "strong presumption of validity" that applies under rational basis review, coupled with the "extraordinary and drastic remedy" of a preliminary injunction, S.P. has failed to clearly show that he is likely to succeed on the merits of his Equal Protection Claim. Accordingly, his motion for a preliminary injunction will be denied.

### III. CONCLUSION

For the foregoing reasons, the court declines to exercise supplemental jurisdiction over the Palmers' claims under Article I, Section 16 of the Constitution of Virginia and the Virginia Religious Freedom Restoration Act. Accordingly, those claims are dismissed without prejudice. Furthermore, the court denies S.P.'s motion for a preliminary injunction with respect to the remaining claim alleging a violation of the Fourteenth Amendment's Equal Protection Clause.

An appropriate order will issue.

Entered: May 27, 2026.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
Chief United States District Judge

20